**Donald M. WOODS, Appellant,**

v.

**William S. TSUCHIYA, Appellee.**

**Appeal No. 84–871.**

United States Court of Appeals, Federal Circuit.

Feb. 15, 1985.

James F. Haley, Jr., Fish & Neave, New York City, argued for appellant.

Henry J. Zafian, Denise L. Loring and Jonathan D. Zischkau, Fish & Neave, New York City, of counsel.

Emil J. Bednar, Vaden, Eickenroht, Thompson, Bednar & Jamison, Houston, Tex., of counsel.

Richard R. Trexler, Trexler, Bushnell & Wolters, Ltd., Chicago, Ill., argued for appellee.

James W. Miller, The Toro Company, Bloomington, Minn., of counsel.

Before DAVIS, BENNETT and MIL-LER, Circuit Judges.

PER CURIAM.

This appeal is from the decision of the United States Patent and Trademark Office ("PTO") Board of Interferences ("Board")[1] awarding priority of invention of the counts in issue to the junior party, William

---

**1.** Reported at 220 USPQ 984.

S. Tsuchiya ("Tsuchiya"), on the basis that the senior party, Donald M. Woods ("Woods"), was estopped from claiming the subject matter of the counts. We affirm.

## BACKGROUND

### 1. *Subject Matter of the Counts*

The invention relates to an apparatus for grass trimming, having a flexible filament of plastic, which is rotated in a cutting plane at high speed so that grass is cut upon impact with the filament. There are eight counts in issue of which the following three (copied from U.S. Patent No. 4,211,-004—"Woods patent," claims 11, 25 and 29, respectively) are representative:

1. In an apparatus for cutting vegetation including a head member having an axis of rotation perpendicular to a cutting plane and further. having an aperture adjacent its perimeter, driving means for rotating said head member about said axis, a flexible non-metallic line member in an uncoiled portion disposed at least partially within said head member and extending from said aperture into the cutting plane, the improvement comprising:

(a) storage spool means carrying a coiled portion of said line member and interconnected with the uncoiled portion of said line member disposed in said head member, said storage spool means mounted for rotation relatively to said head member; and

(b) actuator means controlling rotation of said storage spool means to uncoil selectively a portion of said line member and extend said line member from said aperture by a predetermined increment into the cutting plane during rotation of said head member.

2. An apparatus for cutting vegetation and the like, comprising:

(a) a head member having an axis of rotation perpendicular to a cutting plane and further having an aperture adjacent its perimeter,

(b) driving means for rotating said head member about said axis,

(c) a flexible non-metallic line member disposed at least partially within said head member, and

(d) feed means to uncoil selectively a portion of said line member during rotation of said head member and for dispensing said line member from said aperture into said cutting plane during the cutting of vegetation.

6. Apparatus for cutting vegetation and the like, comprising:

(a) a rotatable head member having a tubular member extending therethrough between a first point at its periphery and a second point adjacent one end of the axis of said head member;

(b) driving means having a hollow rotatable shaft member fixedly interconnected with said tubular member at said point along said axis thereof;

(c) a flexible non-metallic line member having a coiled portion positioned independently of said rotation of said head member and an unwound portion extending through said hollow shaft member and said tubular member to said periphery of said head member to provide a free-traveling cutting end arcuately movable in a cutting plane defined by said rotatable head member; and

(d) feed means for selectively unwinding additional predetermined incremental lengths of said line member for extension from said periphery of said head member during rotation thereof and for anchoring said line member against being drawn from said head member during the cutting of vegetation.

### 2. *Proceedings Below*

On October 22, 1975, Woods filed patent application No. 624,928 ("Woods applica-

tion") drawn to a string-type weed cutter with a mechanical line feed. Tsuchiya filed patent application No. 632,972 ("Tsuchiya application"), which is drawn to a flexible line cutting apparatus, on November 18, 1975. On February 3, 1977, Interference No. 99,553 ("first interference") was declared between the Woods and Tsuchiya applications. There was only one count, which did not require a feed means to replace line broken during operation. The count reads as follows:

> Apparatus for cutting vegetation and the like comprising: a member rotatable about an axis normal to a cutting plane; means forming a continuous passageway in said member extending from a first opening intersected by said axis to a radially spaced second, tubular opening intersected by said cutting plane; flexible line means extending through said passageway and including a first end portion extending outwardly from said first opening and secured externally of said member against rotation with said member, and a second, free travelling end portion extending outwardly from said second, tubular opening, said line means being confined within said tubular opening and free to rotate about its own axis of elongation within said passageway as said member is rotated.

During the first interference, Woods motioned to substitute or add an additional count which recited a mechanical line feeding means as follows:

> An apparatus for cutting vegetation and the like comprising:
> a head member having an axis of rotation perpendicular to a cutting plane and further having an aperture adjacent its perimeter,
> driving means for rotating said head member about said axis,
> a flexible non-metallic line member disposed at least partially within said head member, and

feed means secured against rotation with said head member for dispensing a portion of said line member from said aperture into said cutting plane.

Woods' motion was opposed by Tsuchiya and was denied by the primary examiner. It is undisputed by Woods and Tsuchiya that this additional count and the original count of the first interference are patentably distinct from each other and from the counts of the present interference.

On July 18, 1978, the Board, pursuant to 37 C.F.R. § 1.287(d)(2), awarded priority on the subject matter in issue to Tsuchiya, because Woods failed to comply with a discovery order issued by the Board which required that "the junior party Tsuchiya be given the opportunity to explore the circumstances concerning the question of *derivation* of the subject matter of the count in issue from him by Woods." (Emphasis added.) Woods petitioned the Commissioner of Patents and Trademarks ("Commissioner") for review of the Board's decision, but the petition was denied on February 7, 1979,[2] and no appeal was taken.

As a result of the Board's decision, Woods canceled the claim corresponding to the count in the first interference and resumed *ex parte* prosecution of the remaining claims, which he amended to recite feed means for replacing broken line. Woods argued that these claims were patentably distinct from the count he lost in the first interference, because the count did not require a line feeding mechanism. Apparently persuaded by this argument, the primary examiner allowed the claims of the Woods application to issue in U.S. Patent No. 4,211,004 on July 8, 1980.

After the Woods patent issued and came to Tsuchiya's attention, Tsuchiya withdrew his application from issue and filed a continuation application to copy claims 11–12, 14–17, 19–20, and 22–29 of the Woods patent, which Tsuchiya believed were directed to common subject matter. The primary

---

2. Reported at 207 USPQ 228.

examiner held that claims 11 and 25–29 were supported by the Tsuchiya application, and Interference No. 100,928 ("present interference"), was declared on August 30, 1982, with these six claims as counts.

On September 21, 1982, Tsuchiya filed a motion for judgment against Woods on the grounds of res judicata and estoppel, which Woods opposed. Consideration of Tsuchiya's motion was deferred by the interference examiner until after the close of the motions period. During the motions period, Tsuchiya renewed his motion for judgment and sought to add nine proposed counts, which corresponded to claims 12, 14–17, 19–20, and 22–24 of the Woods patent. Woods then filed motions to dissolve the present interference on the grounds that the Tsuchiya application did not support the counts in issue and Tsuchiya was estopped by his failure to move to amend (to add the subject counts to the first interference). On the latter ground, Woods also sought judgment against Tsuchiya. On June 13, 1983, the primary examiner denied Woods' motions to dissolve and granted Tsuchiya's motion to add counts corresponding to claims 14 and 15 of the Woods patent. Tsuchiya petitioned the Commissioner to add the other seven proposed counts, while Woods petitioned the Commissioner to reverse the primary examiner's denial of Woods' motion to dissolve on the ground of estoppel. The Commissioner denied both of these petitions, but remanded Woods' and Tsuchiya's motions for judgment to the Board.

After oral argument on November 15, 1983, on Tsuchiya's and Woods' motions for judgment on the ground of estoppel, Tsuchiya's motion to add the other seven proposed counts, and Woods' motion to dissolve the present interference for lack of support in the Tsuchiya application, the Board issued a decision on December 19, 1983. It denied Tsuchiya's request to review the primary examiner's decision denying the addition of the seven other proposed counts, because Board jurisdiction is limited to the counts before it. As to Tsuchiya's right to make the counts, the Board held that his application supported claims corresponding to the counts, and, therefore, Woods' motion to dissolve the present interference on this ground was denied. In reaching this conclusion, the Board held that the actuator or feed means limitations in the counts did not exclude some uncoiling of cutting line. Woods' motion for judgment on the ground of estoppel for failure to amend was also denied, because the effect of interference estoppel falls on the losing party, and in the first interference, Tsuchiya was the winning party. The Board did, however, grant Tsuchiya's motion for judgment on the ground of estoppel, because it found there was a judgment in the first interference which was conclusive of all matters which were adjudicated and all matters which might have been adjudicated. The Board's award of priority in the first interference due to Woods' failure to comply with a discovery order was deemed to be "akin to a dismissal *with* prejudice" (emphasis in original), and therefore, not within the estoppel doctrine's exception set forth in 37 C.F.R. § 1.257(b). Accordingly, priority of invention of the subject matter in issue was awarded to Tsuchiya.

## OPINION

### 1. *Tsuchiya's Right to Make*

As the party copying claims, Tsuchiya had the burden of proof on the right to make the counts which had to be met before an interference could properly be declared. *See Holmes v. Kelly*, 586 F.2d 234, 236, 199 USPQ 778, 781 (CCPA 1978). This burden was by clear and convincing evidence. *See Snitzer v. Etzel*, 531 F.2d 1062, 1065, 189 USPQ 415, 417 (CCPA 1976). Although the burden of going forward could have been (and was) shifted to Woods, the burden of persuasion remained at all times on Tsuchiya. *Holmes v. Kelly*, 586 F.2d at 236, 199 USPQ at 781.

We are satisfied with the correctness of the Board's finding that the Tsuchiya application supports the limitations of the counts. The dispute over this issue centers on whether the following feed means limitations are supported by the Tsuchiya application:

"actuator means controlling rotation of said storage spool means to uncoil selectively a a portion of said line member" of count 1;

"feed means to uncoil selectively a portion of said line member during rotation of said head member" of count 2; and

"feed means for selectively unwinding additional predetermined incremental lengths of said line member" of count 6.

The Tsuchiya application discloses a flexible line cutting apparatus, as shown in Figure 2 below, having a flexible cutting line 80 extending from cutting head 4, which is rotated by hollow shaft 28 connected to an electric motor (not shown). A supply of flexible cutting line is coiled on spool 78, which the shaft and cutting head fix to housing 2 to prevent spool rotation.

**FIG. 2**

In another embodiment of the Tsuchiya application, as illustrated in Figures 8 and 9 [3] below, means are provided for unrolling

**FIG. 8**

**FIG. 9**

additional cutting line 80 from rotatable spool 168 to supply new cutting line to cutting head 4. When more cutting line is needed, wheel 190 is turned manually,

3. Figure 9 is a sectional view taken generally along line 9–9 of Figure 8.

causing shaft 186 and knurled pinch roller 182 to rotate so that the line between pinch rollers 182 and 184 is gripped and fed downwardly. Thus, wheel 190 and pinch rollers 182 and 184 constitute means to control rotation of spool 168, whereby cutting line is selectively uncoiled, in accordance with the counts. Accordingly, Tsuchiya's initial burden of going forward with evidence on its right to make the counts was satisfied.

In attempting to rebut Tsuchiya's *prima facie* showing of his right to make the counts, Woods argues that if the claims corresponding to the counts were construed in light of the Woods patent specification, the Tsuchiya application would not have the supporting disclosure required to make the counts. Specifically, Woods argues that the feed means limitations in the claims of the Woods patent should be construed to require a mechanism preventing spool rotation when cutting line is not being uncoiled. In the weed cutter of the Woods patent, shown in Figure 3 below, nonmetallic cutting line 16 extends from rotatable circular member 24, which is ro-

tated by shaft 33 of electric motor 25. Additional amounts of cutting line are fed from storage spool 45 when actuator 47, which is controlled by flexible cable 17, causes the spool to rotate.

FIG. 3

In Figure 5 below, the rotation of flexible cable 17 causes the circular actuator 47 to turn, which rotates spool 45. The operator manually rotates cable 17 by turning a gripping member attached to the handle of the weed cutter (not shown).

FIG.5

When actuator 47 is rotated, pin 49 enters slot 52, as shown in Figure 6 below,[4] causing spool 45 to turn until the pin exits the slot. Convex surface 54 mates and slidably engages with concave surface 53, whereby rotation of actuator 47 will not cause spool 45 to rotate unless and until pin 49 enters slot 52. So long as actuator 47 remains in

---

**4.** Figure 6 is apparently a cross-sectional view taken along line 6–6 of Figure 5.

a fixed position, spool 45 (of Figure 5) will not rotate, and it is this spool rotation control feature that Woods contends should be read into the feed means limitations of the claims corresponding to the counts.

FIG. 6

It is well settled that counts should be given their broadest interpretation and that only when there is ambiguity can resort be had to the specification.[5] *Reese v. Hurst*, 661 F.2d 1222, 1236, 211 USPQ 936, 949–50 (CCPA 1981); *In re Baxter*, 656 F.2d 679, 686, 210 USPQ 795, 802 (CCPA 1981). Woods disingenuously admits that the claims corresponding to the counts are not ambiguous, but urges that recourse to the specification of the Woods patent is appropriate "in view of the various meanings attached to these claims by the parties" and the PTO, citing *Sockman v. Switzer*, 379 F.2d 996, 54 CCPA 1563, 154 USPQ 105 (1967). However, in that case the court did not create an additional exception to the general rule against resorting to the specification, but, rather, dealt with a situation where the claims *were ambiguous*. (The limitation "relatively non-volatile liquid ... consisting essentially of an oxygen-containing organic liquid" could be construed as a liquid compound containing oxygen as part of its chemical structure or a solid oxygen-containing compound included in the organic

liquid. *Id.* at 1000, 54 CCPA at 1568, 154 USPQ at 108–09.) In such a situation, where consideration of both the wording of the count and the arguments of the parties demonstrate that the count has different meanings, it is appropriate to resort to the specification. *Fontijn v. Okamoto*, 518 F.2d 610, 618, 186 USPQ 97, 103 (CCPA 1975). The arguments of parties with respect to the meaning of a count limitation, in and of themselves, do not create an ambiguity where none exists.

After reviewing the language of the counts, we agree with Woods that the counts are unambiguous. The feed means limitations of the counts only require, at most, a mechanism to control spool rotation for selectively uncoiling cutting line; the counts are open to the inclusion or exclusion of means to prevent spool rotation when line feeding is not occurring. Although Woods and Tsuchiya, respectively, argue for and against construing the counts to require spool rotation prevention, in the absence of an ambiguity, the counts cannot be given the narrow construction sought by Woods to rebut Tsuchiya's *prima facie* showing of its right to make.

Woods further argues that even if the Tsuchiya application supports the claims corresponding to the counts, Tsuchiya is estopped from copying these claims and, therefore, cannot satisfy his burden of proof on the right to make. 2 C. Rivise & A. Caesar, *Interference Law and Practice* § 240 (1943) [hereinafter cited as Rivise & Caesar]. Specifically, Woods contends that Tsuchiya had the burden of adding counts to any additional, patentably distinct subject matter during the first interference, and, having failed to meet this burden, he is estopped from contesting claims corresponding to those counts.

5.  Counts in interference are given a broad interpretation, because when an applicant selects language which is somewhat broad in scope, he takes the risk that others with specifically different structures may be able to meet the language selected; he will not be permitted to later urge that the selected language should only be read

in light of his disclosure merely because the language originated with him. *Hemstreet v. Rohland*, 433 F.2d 1403, 1406, 58 CCPA 743, 167 USPQ 761, 763 (1970) (pertinent portion of counts in issue involved means plus function limitations); *Wirkler v. Perkins*, 245 F.2d 502, 505, 44 CCPA 1005, 114 USPQ 284, 287 (1957).

■ The following types of "interference estoppel" may be raised in interference proceedings: estoppel by dissolution, estoppel by judgment, equitable estoppel, and estoppel for failure to file a motion.[6] 2 Rivise & Caesar § 242. *Estoppel by dissolution* prevents a junior party who had access to the senior party's application from obtaining claims to common patentable subject matter after an interference is dissolved. 2 Rivise & Caesar § 243; *see also Meitzner v. Mindick,* 549 F.2d 775, 193 USPQ 17 (CCPA), *cert. denied,* 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124 (1977). *Estoppel by judgment* prevents a losing party in a previous interference between the same parties from making any claim (1) not patentably distinct from the counts in issue in that interference, or (2) which reads on the disclosure of the winning party to which the losing party had access. 2 Rivise & Caesar § 244; *see also In re Risse,* 378 F.2d 948, 54 CCPA 1495, 154 USPQ 1 (1967). *Equitable estoppel* prevents the winning party in a previous interference terminated by judgment (or the senior party in an interference which ends in dissolution) from claiming patentably distinct subject matter to which the other party did not have access.[7] 2 Rivise & Caesar § 245; *see also In re Allsop,* 26 F.2d 559 (D.C.Cir.1928). *Estoppel for failure to file*

*a motion to amend* would prevent a party who fails to file a timely interlocutory motion to amend from later claiming subject matter which could have been added .by such a motion.[8] 2 Rivise & Caesar § 246.

■ We are satisfied that none of the types of interference estoppel precludes Tsuchiya from satisfying his burden of proof as the copier of claims. Priority in the first interference was awarded to the junior party, Tsuchiya, by judgment, so neither estoppel by judgment nor estoppel by dissolution can be properly raised against Tsuchiya. Also, Woods cannot use equitable estoppel against Tsuchiya, because he *had access* to the Tsuchiya application, which supports the copied claims, during the first interference. As previously noted,[9] it has been questioned whether failure to file a motion to amend is an independent ground for estoppel. Although *Avery v. Chase* and *In re Shimer* provide exceptions, we note that they did not involve a situation where the winning party in a previous interference (like Tsuchiya here) was estopped.[10]

The cases relied upon by Woods to show that Tsuchiya is estopped are all distinguishable from the instant facts. In *Ex parte Miller,* 124 USPQ 419 (Bd.App.1959),

6. These types of estoppel are discussed in depth in R.G. Richardson, *Estoppels Arising out of Interference Proceedings in the Patent Office,* 21 J.Pat.Off.Soc'y 411 (1939) [hereinafter cited as Richardson].

7. In view of our conclusion, *infra,* that equitable estoppel does not apply to the facts of this case, we do not address the Board's suggestion (footnote 9 of its opinion) that equitable estoppel is no longer viable.

8. It appears that, with the exception of *Avery v. Chase,* 101 F.2d 205, 26 CCPA 823, 40 USPQ 343 (1939), interference estoppel has been imposed only where an interference was terminated by judgment or by dissolution. *In re Baxter,* 656 F.2d at 685 n. 16, 210 USPQ at 801–02 n. 16 (estoppel is premature without a prior, final determination concerning the subject matter of the interference). Accordingly, it has been questioned whether estoppel for failure to file a motion to amend is (with the exception of *Avery*

*v. Chase* ) a ground of estoppel independent of estoppel by judgment, estoppel by dissolution, or equitable estoppel. Richardson at 424, 428. *But see In re Shimer,* 69 F.2d 556, 21 CCPA 979, 21 USPQ 161 (1934) (losing party in 5-party interference estopped during subsequent *ex parte* proceedings from adding counts which read on the disclosure of another losing party, but not on that of the winning party, for failure to file a timely motion to amend).

9. *See* note 8 *supra.*

10. Woods' motion to add an additional count in the previous interference and Tsuchiya's opposition cannot estop Tsuchiya or prevent Woods from being estopped, because that count is patentably distinct from those in the present interference. *See Stoudt v. Guggenheim,* 651 F.2d 760, 764, 210 USPQ 359, 363 (CCPA 1981).

appellant and Behrens, who was senior to appellant, were involved in two multi-party interferences, which were dissolved with respect to appellant and terminated adversely with respect to Behrens. When appellant later sought claims which were readable upon Behrens' disclosure, but not on the disclosures of the other parties involved in the interferences, the Board held that Miller was estopped. Accordingly, *Ex parte Miller* is a case involving estoppel by dissolution, which is not apposite. In *In re Hoover Co.*, 134 F.2d 624, 30 CCPA 927, 57 USPQ 111 (1943), the junior party was awarded priority in an interference proceeding, because the senior party could not make the counts. When the junior party subsequently tried to obtain claims to subject matter common to the applications previously in interference, the court held the junior party was estopped, because he was not the prevailing party in the previous interference, which was in effect terminated by dissolution. Accordingly, *In re Hoover Co.* also involves estoppel by dissolution. In *In re Allsop*, Allsop won an interference with Buckley, who then obtained a patent with claims not supported by Allsop's patent in interference. When Allsop tried to copy claims of Buckley's patent in a second application pending prior to the declaration of the interference, the court held Allsop estopped. As related earlier, *In re Allsop*, unlike the present case, involved equitable estoppel.

In view of the foregoing, we conclude that Woods has not rebutted Tsuchiya's evidence on the right to make. Therefore, we hold that Tsuchiya has met his burden of proof on this issue.

2. *Estoppel Against Woods* [11]

■ In the first interference, Tsuchiya moved for additional discovery under 37 C.F.R. § 1.287(c) alleging that "Woods derived the invention defined by the count from him [Tsuchiya]." Tsuchiya requested, *inter alia*, (1) the production of documents relating in any way to Tsuchiya's disclosure to Woods, and (2) evidence relat-

ing to Woods' development of the invention defined by the count. In a "LETTER TO INTERFERENCE EXAMINER," Woods stated that he neither objected to any of Tsuchiya's requests nor opposed granting the requested discovery under Rule 287(c). Accordingly, an order issued granting the motion *in toto*.

Subsequently, Tsuchiya filed a motion for sanctions, stating that Woods had failed to comply with the Board's discovery order. The Board found that Woods' explanation of his failure to comply did not constitute "good and sufficient reasons." Accordingly, Tsuchiya was awarded priority of invention of the subject matter in issue pursuant to 37 C.F.R. § 1.287(d)(2) "for failure to comply with an order under the provisions of (1.287(c))." Woods did not seek judicial review of the discovery order, but elected to prosecute his application *ex parte* and to obtain claims which read upon Tsuchiya's application.

In the second interference, Tsuchiya moved for a judgment based on estoppel, contending that he was awarded priority on the merits in the prior proceeding. The Board granted the motion. Woods argued before the Board, and again before this panel, that the present case falls under the exception to the estoppel-by-judgment doctrine set forth in 37 C.F.R. § 1.257(b).

Under 37 C.F.R. § 1.257(a), the general rule is:

> The parties to an interference will be presumed to have made their inventions in the chronological order of the filing dates of their applications for patents involved in the interference or the effective filing dates which such applications have been accorded; and the burden of proof will rest upon the party who shall seek to establish a different state of facts.

Despite this presumption, Woods' loss in the first interference would normally preclude him from prevailing in the present

---

**11.** Because of their importance, we start by stating the facts which relate to estoppel.

interference in view of the previously-discussed doctrine of estoppel by judgment. However, the effect of estoppel by judgment, as correctly pointed out by Woods, is limited by 37 C.F.R. § 1.257(b), which provides:

The termination of the interference by dissolution under § 1.231 or § 1.237, without an award of priority, or *by an award of priority based solely upon ancillary matters,* shall not disturb this presumption, and a party under these circumstances enjoying the status of a senior party with respect to any subject matter of his application shall not be deprived of any claim to such subject matter solely on the ground that such claim was not added to the interference by amendment under § 1.231. [Emphasis added.]

Under 35 U.S.C. § 135(a), the Board has jurisdiction to decide questions of priority of invention. The Board also has jurisdiction over questions which are "ancillary to priority." *Myers v. Feigelman,* 455 F.2d 596, 59 CCPA 834, 172 USPQ 580 (1972). An issue may be so "logically related" to priority that an award of priority cannot be decided without first resolving that issue, which is then consequently described as "ancillary." *Id.* This "may require rulings on matters not *per se priority questions.*" *Bloom v. Furczyk,* 144 USPQ 678, 687 (Bd.Pt.Int.1955) (emphasis added). As one author has pointed out, however, there is, as yet, no reliable, *a priori* method of determining whether or not a given issue is ancillary to priority. Sughrue, *Interference Practice,* Patent Resources Group, Inc., p. 5–6 (1981). Appellant argues that the award of priority in the first interference was solely a dispute as to the "scope of discovery," not on the merits, and there-

fore an award on ancillary matters. We disagree.

In *Morris v. Tegtmeyer,* 655 F.2d 216, 210 USPQ 693 (CCPA 1981), our predecessor court stated that a decision deferring consideration of a "motion to suppress" until the final hearing is simply a question of timing, not of admissibility, and is therefore *not* ancillary to priority.[12] "Th[is] case may justify an inference that a procedural matter is not ancillary to priority while a substantive matter may be." Klitzman, *Patent Interference Law and Practice,* p. 74 (1984). Accordingly, a procedural matter which relates to the scope of discovery, when it is not known whether the requested discovery will actually lead to "legally relevant" and "admissible" evidence, is not necessarily ancillary to priority. *Cf. Goodbar v. Banner,* 599 F.2d 431, 202 USPQ 106 (CCPA), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). "The happenstance that the ordered discovery *might* result in evidence bearing upon or even establishing priority does not make this issue ancillary to priority." *Id.* 599 F.2d at 435 (emphasis in original). In a word, the precise meaning of the phrase "ancillary matters" in the context of § 1.257(b) is not clear.[13]

In the present case, Woods chose not to appeal the Board's order which imposed sanctions under 37 C.F.R. § 1.287(d)(2). This rule states:

Any failure to comply with an order under the provisions of paragraph (c) of this section may be considered by the Board of Patent Interferences as basis for applying appropriate restrictions against the party failing to comply, *for holding certain facts to have been established,* and in appropriate case for

---

12. *Compare Morris v. Diamond,* 634 F.2d 1347, 208 USPQ 202 (CCPA 1980) (an earlier decision in the same interference as *Morris v. Tegtmeyer,* holding that the admissibility of testimony relevant to a determination of priority is ancillary).

13. Appellant argues that the definition of "ancillary matters" in 1.257(b) is not the same as the

jurisdictionally minded "ancillary to priority." In light of our holding today, we need not address this contention. But it is helpful to note that we know of no caselaw which defines the phrase "ancillary matters" in the context of 1.257(b).

awarding priority against him, or for taking such other action as may be deemed appropriate. (Emphasis added.)

This section is intended to provide for sanctions by the Board where there has been noncompliance with one of its orders. 36 Fed.Reg. 8733 (1971). Under the wording of the regulation, the Board could, in its discretion, hold "certain facts to have been established." In the instant case, the discovery order related to evidence bearing directly on the heart of the first interference—originality and derivation. Woods' refusal was the exact equivalent of a refusal to produce evidence going to the very issue of whether he had the priority he claimed. These were *per se* priority questions. *Cf. Bloom, supra.* Our predecessor court has held that a final judgment in an interference is conclusive of all matters which were adjudicated and also all matters which *might have been* adjudicated. *Stoudt v. Guggenheim,* 651 F.2d 760, 764, 210 USPQ 359, 363 (CCPA 1981). Accordingly, we can and should view these *per se* priority "facts to have been established" in favor of Tsuchiya.[14]

Woods did not comply with the order, nor did he seek judicial review of the Board's ultimate order. As the Board properly indicated, it is in the public interest as well as consistent with the Rules of Practice to stop relitigation of such questions that could and should have been decided in the earlier interference. In order to give sanctity to the Board's final judgment, Woods should not be allowed to resist discovery, fail to appeal the Board's order, prosecute *ex parte,* force a second interference, and

then have a second bite at the apple. The Rules were not designed to engender such perverse results.

Accordingly, we cannot say that the initial award of priority to Tsuchiya was based "*solely* upon *ancillary* matters" (emphasis added), but conclude, rather, that it was an award of priority on the merits consonant with the policy behind Rule 287(d)(2), *supra.*

*Affirmed.*

JACK P. MILLER, Circuit Judge, dissenting.

The three members of this panel are in agreement except with respect to the second point of the opinion entitled "*Estoppel Against Woods.*" On this point, the Board of Patent Interferences ("board") granted Tsuchiya's motion for judgment based on estoppel arising out of the first interference. My brothers ("the majority") would affirm; whereas, I would vacate the board's judgment and remand.

The majority has reacted to this case as though it were some strange, deep sea growth (properly termed an "interference"), which threatens the "sanctity" of a final judgment of the board against the party Woods. Allow Woods to resist discovery, fail to appeal the board's order, prosecute *ex parte,* force a second interference, and then have a second bite at the apple? No—never! Such a "perverse result" must be avoided even though 37 C.F.R. § 1.257(b) permits it.[1]

No matter that the board's opinion in the first interference gave *noncompliance*

---

**14.** In denying Woods' petition relating to the Board's denial on reconsideration of its initial award of priority to Tsuchiya, the Commissioner stated that it was not readily apparent that the sanction imposed by the Board was excessive where the issue of derivation was involved, and that "it would have been difficult to impose any meaningful lesser sanction." *Woods v. Tsuchiya,* 207 USPQ 228, 230 (Comm'r 1979). In effect, the Commissioner's underlying rationale is consistent with our own view—where the critical issues of originality and derivation are involved, then implicit in the Board's award of

priority under Rule 287(d)(2) is the assumption that certain facts as to those issues "have been established."

**1.** I am no apologist for a litigant who seeks to defeat discovery; nor do I approve of relitigation of questions that should have been decided earlier. However, the way to deal with such matters is for the Patent and Trademark Office to change the regulations—rather than for this court, in effect, to do so.

*with a discovery order* as the *only* stated reason for awarding priority to Tsuchiya and, indeed, refrained from *any* indication that its award of priority was on the merits![2] The majority's interpretation of the "public interest" compels it to ignore the board's own words and to gratuitously conclude that the award in the first interference was "on the merits consonant with the policy behind Rule 287(d)(2)."

Now, why such concern of the majority over whether the award in the first interference was on the merits? Because that would support granting, in the present interference, estoppel by judgment in favor of Tsuchiya. But why can't the majority recognize that the award in the first interference was based "solely" on ancillary matters? It can, and it should. But 37 C.F.R. § 1.257(b) provides that where priority is based solely on ancillary matters, Woods' status as senior party would be preserved and there could be no judgment by estoppel; whereas, the majority has decided that Woods simply must be estopped! Otherwise, all is lost. Well, then, how does the majority get around the *fact* that the board's award in the first interference was based solely on an ancillary matter? The answer, curiously, is "magic." You see, 37 C.F.R. § 1.287(d)(2) provides for sanctions by the Board of Patent Interferences for failure to comply with an order. One sanction is the award of priority against the defaulting party. Another is that the failure "may be considered by the Board of Patent Interferences as basis for ... holding certain facts to have been established." Even though, as a matter of fact, such "facts" were never established? That's what the majority says! Just call those non-facts "*per se* priority facts," and *voila*! They are established![3] And so, "robes flying,"[4] the majority gallops off to proclaim to interference practitioners that it is not what the Board of Patent Interferences says that controls, but what a majority of a panel of this court thinks the board could have said controls.

When district courts deem facts to have been established as a sanction under Federal Rule of Civil Procedure 37(b)(2)(A) for noncompliance with a discovery order, the facts deemed established are explicitly stated. *See General Atomic Co. v. Exxon Nuclear Co.*, 90 F.R.D. 290 (S.D.Cal.1981); *Cromaglass Corporation v. Ferm*, 344 F.Supp. 924 (M.D.Pa.1972), *appeal dismissed*, 500 F.2d 601 (3d Cir.1974) (in banc); *Kahn v. Secretary of Health, Education, and Welfare*, 53 F.R.D. 241 (D.Mass.1971).

If the alternative sanction of a default judgment under Federal Rule of Civil Procedure 37(b)(2)(C) is selected, that judgment has the effect of res judicata. 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* § 55.09 (2d ed. 1984); 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* §§ .409[1.–2], .409[4] (2d ed. 1984). The effect of res judicata is that the judgment exclusively establishes only facts in issue and directly adjudicated or necessarily involved in the determination of an action. *See Gaitan v. United States*, 295 F.2d 277, 279 (10th Cir.1961), *cert. denied*, 369 U.S. 857, 82 S.Ct. 939, 8 L.Ed.2d 15 (1962).

In the context of an interference, the entry of judgment as a sanction should not alone result in the assumption that certain

2. The board simply said:
   Accordingly, in view of the failure of the senior party to comply with the order of May 15, 1978, pursuant to 37 CFR 1.287(d)(2) priority of invention of the subject matter in issue is hereby awarded to William Sadayuki Tsuchiya, the junior party.

3. "'When *I* use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean—neither more nor less.'" L. Carroll, *Alice's Adventures in Wonderland and*

*Through the Looking-Glass and What Alice Found There* 190 (R.L. Green ed. 1971). Also apt is Alice's comment: "'I've often seen a cat without a grin ... but a grin without a cat! It's the most curious thing I ever saw in all my life!'" *Id.* at 59.

4. *Norton v. Macy*, 417 F.2d 1161, 1168 (D.C.Cir. 1969) (Tamm, J., dissenting).

facts were established, because 37 C.F.R. § 1.257(b), which has no counterpart in the Federal Rules of Civil Procedure, makes the basis of a judgment of priority critical to its prospective effect. Given this criticality and the fact that the board's decision in the first interference was not explicit, this court should not assume that the basis for that decision was on the merits rather than on an ancillary matter (as noted *infra*).

Contrary to note 14 of the majority opinion, the Commissioner's opinion does not clarify the confusion regarding the basis of the board's judgment of priority in the first interference.

If all this is not persuasive, the majority has another arrow—the precise meaning of "ancillary matters" in the context of 37 C.F.R. § 1.257(b) is not clear, and there is no reliable *a priori* method of determining whether or not a given issue is ancillary to priority! There are three significant cases bearing on interpretation of the word "ancillary" for purposes of 37 C.F.R. § 1.257(b).

In *Goodbar v. Banner*, 599 F.2d 431, 435, 202 USPQ 106, 109 (CCPA), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979), the court said that where it was not known whether requested discovery would lead to legally relevant and admissible evidence, the court was of the opinion that an order for discovery was not ancillary to priority "as the case law has developed the meaning of that term." And it added: "The happenstance that the ordered discovery *might* result in evidence bearing upon or even establishing priority does not make this issue ancillary to priority." *Id.* (Footnote omitted.)

The following year, in *Morris v. Diamond*, 634 F.2d 1347, 1350, 208 USPQ 202, 204 (CCPA 1980), the court said that the admission of testimony relevant to a determination of priority was a matter ancillary to priority and properly within the court's appellate jurisdiction.

The next year, in *Morris v. Tegtmeyer*, 655 F.2d 216, 220, 210 USPQ 693, 697 (CCPA 1981), the court pointed to its statement in *Morris v. Diamond*, 634 F.2d at 1350, 208 USPQ at 204, that "an interlocutory decision on the *admissibility* of evidence relating to priority is a matter ancillary to priority," which it defined as "a matter logically related to the outcome of a priority issue."

Thus, not only do the two most recent opinions of our predecessor court reflect a more liberal view of the meaning of "ancillary matters," but the most recent opinion sets forth a reasonably practical definition which, contrary to the majority, seems sufficiently clear to provide a workable, *a priori* guide-post for determining whether most issues, at least, are ancillary to priority. Certainly, this definition covers the discovery order sought in the first interference which, as the majority recognizes, logically related to evidence bearing on originality and derivation.

The board's judgment should be vacated and the case remanded for a determination of priority on the merits.