Warren E. DAVIS and Donald
W. Granger, Appellants,

v.

Stanley B. LOESCH, James C. St. John,
and Danny K. Mints, Appellees.

No. 92–1231.

United States Court of Appeals,
Federal Circuit.

July 9, 1993.

---

2. Benderson's first cause of action requests equitable relief in the form of an order to the Postal Service requiring it, *inter alia*, to remove the offending construction, which the Postal Service informs us is now completed. In light of our disposition of this case, we need not decide whether the Postal Service correctly asserts that it is immune from injunctive orders that would limit its actions. We note, however, that the Eighth Circuit has decided to the contrary in an opinion holding that a district court has subject matter jurisdiction over a cause of action re-

questing, *inter alia*, that the landlord Postal Service be enjoined from disturbing the tenant's possession of property it had leased from the Postal Service. *Continental Cablevision of St. Paul, Inc. v. United States Postal Serv.*, 945 F.2d 1434, 1439 (8th Cir.1991).

3. On the merits, the court having jurisdiction to hear the case will determine what rights, if any, Benderson retains after it deeded the property to the Postal Service.

**964**

Penrose Lucas Albright, Mason, Mason &
Albright, Arlington, VA, argued for appellants.

Donald R. Dunner, Finnegan, Henderson,
Farabow, Garrett & Dunner, Washington,
DC, argued for appellees. With him on the
brief were Allen M. Sokal and Richard L.
Stroup. Also on the brief were Lucian
Wayne Beavers, Clifford C. Dougherty, III,
Laney, Dougherty, Hessin & Beavers, Oklahoma City, OK and James R. Duzan, Halliburton Services, Duncan, OK, of counsel.

Before PLAGER and SCHALL, Circuit
Judges, and CURTIN, Senior District
Judge.*

SCHALL, Circuit Judge.

This is an appeal, pursuant to 35 U.S.C.
§ 141 (1988), from a decision of the Board of
Patent Appeals and Interferences (Board) of
the United States Patent and Trademark
Office (PTO) in an interference. The interference was between, on the one hand, the
continuation application of joint inventors
Stanley B. Loesch, James C. St. John, and
Danny K. Mints (sometimes collectively,
"Loesch")[1] and, on the other hand, United
States Patent No. 4,420,942 (the '942 patent),
issued to joint inventors Warren E. Davis
and Donald W. Granger (sometimes collectively, "Davis"), and the application of Davis
and Granger for reissuance of the '942 Patent. In its decision, the Board held that
Loesch, St. John, and Mints were entitled, on
their continuation application, to a patent on
their claims corresponding to the interference count, over the claims of joint inventors
Davis and Granger corresponding to the interference count. Davis and Granger appeal
the Board's decision. We *affirm*.

## BACKGROUND

Loesch, St. John, and Mints filed their
patent application on March 31, 1980. On
July 16, 1982, Davis and Granger filed their
patent application. On December 20, 1983,
the PTO issued the '942 Patent to Davis and
Granger. The '942 patent contains forty-three claims. Loesch, St. John, and Mints
filed their continuation application on March
14, 1984. Shortly thereafter, on March 27,

---

\* Honorable John T. Curtin, Senior Judge, Western
District of New York, *sitting by designation.*

1. The application was assigned to the Halliburton Company (Halliburton).

1984, the PTO issued United States Patent No. 4,438,729 (the '729 patent) to Loesch, St. John, and Mints on their March 31, 1980 application. The '729 patent contains sixty-two claims. On April 4, 1985, an interference was declared between Loesch's pending continuation application and the '942 patent. Loesch was designated the senior party, based upon the March 31, 1980 application. After Davis applied for reissuance of the '942 patent on December 18, 1985, Loesch copied claims 1–5 and 41–55 from the '942 patent and the reissue application. The examiner-in-chief determined that all the copied claims corresponded to a single interference count: copied claim 1 of the '942 patent. Therefore, that claim was denominated the interference count.

The '729 patent and the '942 patent and the continuation application and the reissue application are directed to a flameless apparatus for converting liquid nitrogen into gaseous nitrogen so that the nitrogen can be pumped into an oil well. In general, each party's apparatus uses the heat generated by the pumping mechanism's engine to raise the temperature of the liquid nitrogen sufficiently to vaporize it so that it can be pumped into the well. Each party's apparatus does this by transferring heat from the pump's engine to a fluid which, with its temperature thus raised, then heats the liquid nitrogen sufficiently to vaporize it.

In view of the fact that Loesch was the senior party in the interference, the Board determined that the question of which party was entitled to a patent on claims corresponding to the interference count turned on three questions:

1) whether the disclosure of Loesch in the '729 patent supported all the material limitations of the count;

2) whether Davis's reissue claims 44 through 55 were patentably distinct in the sense of 35 U.S.C. § 103 from the count;[2]

3) whether Loesch was entitled to judgment on the ground that all of the Davis claims at issue (claims 1 through 5 and 41 through 43 of the '942 patent and claims 44 through 55 of the reissue application) were unpatentable to Davis under 35 U.S.C. § 102(e) and/or 35 U.S.C. § 103 in view of the disclosure of the '729 patent.

As far as question 1) was concerned, the Board concluded that the disclosure of Loesch supported all the material limitations of the interference count. It did so based upon its interpretation of the interference count and its analysis of the specification in the '729 patent. Turning to question 2), the Board concluded that Davis's reissue claims 44 through 55 were not patentably distinct, in the sense of 35 U.S.C. § 103, from the interference count. Finally, the Board also resolved question 3) in favor of Loesch. First, it concluded that claims 1, 4, 5, 41, and 42 of the '942 patent and claims 1, 4, 5, 41, 42, 50, 53, and 54 of the reissue application were unpatentable to Davis under 35 U.S.C. § 102(e) because all of the elements of those claims were disclosed in the '729 patent. Second, it concluded that claims 2, 3, and 43 of the '942 patent and claims 2, 3, 43 through 49, 51, 52, and 55 of the reissue application were unpatentable to Davis under 35 U.S.C. § 103 because the disclosure of the '729 patent rendered the apparatus claimed in the pertinent claims obvious.[3] Accordingly, on December 23, 1991, the Board entered judgment in favor of Loesch as indicated above. This appeal followed.

## DISCUSSION

### I.

■ Before reaching the merits, we briefly address a question which has been raised by motion with respect to our jurisdiction in this matter. The question has been raised by

---

2. In an interference, a claim is patentably distinct from the interference count, in the sense of 35 U.S.C. § 103, if the apparatus claimed by the count does not render what is being claimed by the claim at issue obvious. *See General Foods v. Studiengesellschaft Kohle MbH*, 972 F.2d 1272, 1278–79, 23 USPQ2d 1839, 1844 (Fed.Cir.1992) (holding that one claim is "patentably distinct" from another if the differences between them are

such that the subject matter of one would not have been obvious over the subject matter of the other).

3. The claims of the '942 patent and the first forty-three claims of the reissue application are identical.

reason of the fact that the notice of appeal which was filed with the Board does not bear the names of both Davis and Granger; but rather, is captioned "DAVIS ET AL." We have no difficulty in concluding that we have jurisdiction.

In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court held that the failure of a party to be named in the notice of appeal from a judgment of a district court deprived the appellate court of jurisdiction over that party, and that the designation "et al." in the notice of appeal did not serve to identify the party. *Torres* involved Fed. R.App.P. 3, which covers appeals from district courts. This case involves Fed.R.App.P. 15, which deals with the review of orders of administrative agencies, boards, and commissions. The language of Rules 3 and 15 is very similar, however,[4] and the rationale of *Torres*, see 487 U.S. at 315–318, 108 S.Ct. at 2407–10, would seem to apply in a Rule 15 context. Accordingly, for purposes of this case, we will assume, without deciding the issue, that the *Torres* rationale applies generally to appeals under Rule 15. However, in no event does *Torres* govern this particular case.

In the interference proceeding, Davis and Granger were deemed to be a single party and were designated "Davis et al." Loesch, St. John, and Mints also were deemed to be a single party; they, in turn, were designated "Loesch et al." The PTO designated Davis and Granger one single party and Loesch, St. John, and Mints another single party based upon the long-standing practice of the PTO that, in an interference, joint inventors are deemed to constitute a single party. *See Manny v. Garlick*, 135 F.2d 757, 768, 57 USPQ 377, 388 (CCPA 1943).

Before the Board, then, the term "Davis et al." stood for a single party, comprised of Davis and Granger. By the same token, the term "Loesch et al." stood for a single party, comprised of Loesch, St. John, and Mints. Thus, there were only two parties in this case: on one side, junior party "Davis et al.";

on the other side, senior party "Loesch et al." This means that the notice of appeal, which is captioned "DAVIS ET AL" and which states in the first sentence that "Davis et al." appeal, meets the requirement of Fed. R.App.P. 15(a) that the notice of appeal "specify the parties seeking review . . . ." It does so because the words "Davis et al." stand for a single party and it is that single party that is appealing. Thus, the notice of appeal specifies "the parties seeking review . . . ." The *Torres* rationale does not apply here because in *Torres* there were multiple appellants. Put another way, the "et al." in this case is part of the title of a single party, while in *Torres*, the "et al." meant literally "and others," or other parties.

## II.

Turning to the merits, Davis has the burden of establishing that the Board committed an error of law or that the Board's fact findings are clearly erroneous. *In re Caveney*, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed. Cir.1985). Clear error exists when, on the entire record, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Because we conclude that the decision of the Board is correct as a matter of law and that the decision is supported by findings of fact which are not clearly erroneous, we affirm.

A. *Whether the disclosure of Loesch supports the interference count.*

Davis's first argument on appeal is that the Board erred in concluding that the disclosure of the '729 patent supports all the material limitations of the interference count. The interference count reads as follows:

An apparatus for converting liquid nitrogen to gaseous nitrogen comprising:

a. a source of liquid nitrogen;

b. at least one liquid nitrogen inlet;

c. means for pumping said liquid nitrogen connected to said inlet;

---

4. Fed.R.App.P. 3(c) states, in pertinent part, that "[t]he notice of appeal shall *specify the party or parties taking the appeal* . . . ." Fed.R.App.P.

15(a) states, in pertinent part, that "[t]he petition [for review] shall *specify the parties seeking review* . . . ."

d. engine means for driving said pumping means having engine fluid flow therethrough;

e. first heat exchanger having first fluid flow therethrough and connected to said means for pumping liquid nitrogen wherein heat is provided from said first fluid to said liquid nitrogen thereby converting said liquid nitrogen to gaseous nitrogen;

f. means for conducting said first fluid through said first heat exchanger; and

g. second heat exchanger having said first fluid flow therethrough and providing engine fluid from said engine means in heat exchange relation with said first fluid.

The operation of the preferred embodiment of Loesch's apparatus is disclosed in the specification and the drawings of the '729 patent. As one reads the following description of the operation of that embodiment, he or she may wish to refer to attached Appendix A, which is Figure 4 from the '729 patent. The numbers in the description correspond to the numbers in Appendix A.

Figure 4 is a schematic flow diagram for what is termed the "coolant fluid" in the Loesch apparatus. Loesch's preferred embodiment works in the following manner: Coolant fluid moving via conduit 70 enters a heat exchange chamber (44). In that chamber, it gives up heat which it has gained from the pump's engine (22), in order to vaporize liquid nitrogen entering the heat exchange chamber via a second conduit (68). After performing this task, the coolant fluid leaves the heat exchange chamber via another conduit (72) and moves through a series of coolers (50, 52, 54, 58, 56) until it enters a "commingling chamber" (46) via conduit 136 at inlet 137. The coolant fluid enters the commingling chamber at a temperature of approximately 160–170 degrees F. Inside the commingling chamber, the coolant fluid mixes with fluid which enters the commingling chamber at inlet 166 at a temperature of approximately 190 degrees F., this fluid having been heated by the pump's engine (22). Following this mixing or commingling process, coolant fluid exits the commingling chamber (46) at a temperature of approxi-

mately 180 degrees F. at outlet 190. From there, it is directed via conduits 202 and 70 to the heat exchange chamber (44) where, as described above, it vaporizes the liquid nitrogen. The fluids in the Loesch apparatus continuously recirculate.

As it did before the Board, Davis advances two contentions. The first is that the "commingling chamber" disclosed in the '729 patent's specification is not a "heat exchanger" within the meaning of paragraph g of the interference count. The second is that, properly interpreted, the interference count requires that the engine cooling fluid and the nitrogen vaporizing fluid flow in separate closed loops. As discussed under *Obviousness* below, Davis's preferred embodiment operates in this manner. As just seen, the '729 patent discloses a different system. In that system, warmer fluid and cooler fluid are not separated, but mix in the commingling chamber to arrive at an intermediate temperature for the vaporizing process. Thus, Davis argues, the Loesch disclosure does not support the interference count.

 Interpretation of an interference count is a question of law, which we review de novo. *DeGeorge v. Bernier,* 768 F.2d 1318, 1321, 226 USPQ 758, 760 (Fed.Cir. 1985). The Board determined that the term "heat exchanger" in paragraph g of the interference court was a functional, generic term, encompassing all kinds of heat exchange systems, including "direct contact" heat exchange systems. A "direct contact" heat exchange system is one "in which both fluids flow continuously through the same channels." Encyclopedic Dictionary of Physics (Pergamon 1961), pp. 611–612. The Board found that the commingling chamber in the '729 patent operated as a "direct-contact" type heat exchanger and that, therefore, it provided support for the "second heat exchanger" limitation in paragraph g of the count.

As far as the second part of Davis's first argument is concerned, the Board concluded that there was nothing in the interference count which could be read as requiring "two separate closed loops for the engine cooling fluid and for the fluid for vaporizing the

nitrogen." Looking at paragraphs e, f, and g of the interference count, the Board stated: "The plain language of the count simply requires the first fluid to flow *through* the second heat exchanger, not separately from the engine fluid in the second heat exchanger in closed loops...." (emphasis in Board decision). The Board then pointed out that in Loesch's preferred embodiment, after imparting heat to the liquid nitrogen in the heat exchange chamber, the coolant fluid flows through various coolers and thereafter into the commingling chamber, where it mixes with fluid from the pump's engine to gain heat. Accordingly, the Board concluded, "the first fluid entering inlet 137 of the second heat exchanger (commingling chamber 46) necessarily flows through the second heat exchanger, and by virtue of its mixing with the engine fluid entering inlet 166 is in heat exchange relation therewith." Accordingly, the Board determined that the fluid flow path disclosed in the '729 patent supports the flow path limitations of the interference count.

"Interference counts are given the broadest reasonable interpretation possible, and resort to the specification is necessary only when there are ambiguities inherent in the claim language or obvious from arguments of counsel." *DeGeorge v. Bernier*, 768 F.2d at 1321–22, 226 USPQ at 760–61. Application of this proposition to the facts of the instant case compels the conclusion that the Board did not err in its interpretation of the term "heat exchanger" appearing in paragraph g of the interference count or in its interpretation of the "flow therethrough" or "flow through" requirement of paragraphs e, f, and g of the count. In neither case is there anything in either "the wording of the count" or "the arguments of the parties" which demonstrates "that the count has different meanings...." *Woods v. Tsuchiya*, 754 F.2d 1571, 1578, 225 USPQ 11, 15 (Fed.Cir.), *cert.*

*denied*, 474 U.S. 825, 106 S.Ct. 81, 88 L.Ed.2d 67 (1985).

On its face, the wording of the count is not ambiguous. While "heat exchanger" is a generic term, its meaning is clear. Its meaning is not made otherwise simply because it is broad enough to encompass different kinds of heat exchangers: the kind represented by the preferred Loesch embodiment and the kind represented by the preferred Davis embodiment. The same reasoning applies to the "flow therethrough" and "flow through" requirements of the count.[5]

Neither do the "arguments of the parties" demonstrate that the count is ambiguous. Davis's argument that the count is ambiguous is based upon the specification of the '942 patent and upon the difference between Davis's preferred embodiment and Loesch's preferred embodiment. For this reason, the argument runs afoul of what one of our predecessor courts stated in an interference case:

> The board determined the existence of an ambiguity because it found that the arguments of the parties indicated that the count language has different meanings. The mere fact that the parties take different views, however, is irrelevant. To make plain a latent ambiguity, the parties' arguments must be reasonable. Shah's arguments rest entirely on resort to his disclosure ... for an interpretation of the count language, and in the utilization of that interpretation as a basis for both finding ambiguity and resolving it. Resort to a disclosure has the limited purpose of resolving an ambiguity—not of creating one. *Fontijn v. Okamoto*, 518 F.2d 610, 186 USPQ 97 (CCPA 1975).

*Kroekel v. Shah*, 558 F.2d 29, 32, 194 USPQ 544, 547 (CCPA 1977).

In short, the Board did not err in construing the interference count.[6] Neither do we find clear error in any of the Board's factual

---

**5.** Indeed, Davis acknowledges that "[a]ppellants are not unmindful that the count does not, as such, require a closed loop system for the first fluid and there are conceivable circumstances wherein the first fluid might not be in a closed loop...." Appellants' Brief filed May 27, 1992, p. 19.

**6.** We do not address Davis's argument that the Board's interpretation of the interference count renders the count anticipated by certain prior art: United States Patent No. 3,229,472 issued to Edward W. Beers. The Board did not consider this argument because it determined that Davis had not raised it in a timely manner. We find no abuse of discretion in the Board's ruling on this

findings concerning Loesch's disclosure. Accordingly, we will not overturn the Board's holding that the disclosure of Loesch in the '729 patent supports all the material limitation of the interference count. As this court observed in *Woods v. Tsuchiya, supra,* "when an applicant selects language which is somewhat broad in scope, he takes the risk that others with specifically different structures may be able to meet the language selected. . . ." 754 F.2d at 1578, 225 USPQ at 15, n. 5.

## B. *Anticipation*

Davis's second argument on appeal is that the Board erred in concluding that claims 1, 4, 5, 41, and 42 of the '942 patent and claims 1, 4, 5, 41, 42, 50, 53, and 54 of the reissue application were unpatentable to Davis under 35 U.S.C. § 102(e) in view of the '729 patent. The Board's finding of anticipation was dictated by its determination that the Loesch patent sufficiently discloses all elements of the interference count, to which the referenced claims correspond. This was not error. *See Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1236, 9 USPQ2d 1913, 1920 (Fed.Cir.), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989) (explaining that an invention is anticipated if every element of the claimed invention, including all claim limitations, is shown in a single prior art reference).

## C. *Obviousness*

Finally, Davis contends that even if Loesch's disclosure does support the interference count—and therefore the count's subject matter is patentable to Loesch—Davis still is entitled to a patent on claims 2, 3, 43–49, 51, 52, and 55 of its reissue application. Davis argues that, contrary to the

holding of the Board, those claims, which describe an apparatus having a "closed loop system" (Claims 2, 3, 43, 48, 49, 51, 52, and 55) or a system of "separate . . . fluid circuit[s]" (claims 44–47) are not rendered obvious under 35 U.S.C. § 103 by the disclosure of the '729 patent.

Davis's argument is based upon the fact that the claims at issue are directed to what is sometimes referred to as a "shell-and-tube heat exchange system." In such a system, fluid which has given up heat in order to vaporize liquid nitrogen regains heat by passing through heat exchangers in which it has its temperature raised by, but in which it does not mix with, fluid which has been heated by the pump's engine. With its temperature thus raised, the fluid proceeds to the location where it heats the liquid nitrogen. Both fluids continuously recirculate without ever mixing. Thus, the nitrogen-warming fluid and the engine-cooling fluid circulate in two distinct or two separate "loops."

Determination of obviousness is a question of law based upon underlying questions of fact. *In re Fritch,* 972 F.2d 1260, 1264, 23 USPQ2d 1780, 1782 (Fed.Cir.1992). The Board did not err on this point. It is undisputed that the '729 patent discloses substituting a shell-and-tube heat exchanger for the commingling chamber.[7] In addition, there was ample evidence in the record that in view of that disclosure, it would have been obvious to one of ordinary skill in the art who wished to substitute a shell-and-tube heat exchanger for the commingling chamber to rework Loesch's preferred embodiment into an apparatus in which the fluid in the nitrogen-heating loop never mixed with the fluid in the separate, engine-cooling loop. Particularly, the Board had before it the declaration of Dan R. Neal, a Halliburton employee

point. *United States Dep't. of Energy v. Daugherty,* 687 F.2d 438, 446, 215 USPQ 4, 11 (CCPA 1982). *See also Chester v. Miller,* 906 F.2d 1574, 1579, 15 USPQ2d 1333, 1338 (Fed.Cir.1990); *Magdo v. Kooi,* 699 F.2d 1325, 1329–31, 216 USPQ 1033, 1037–38 (Fed.Cir.1983).

**7.** At column 9, line 21, the '729 patent reads as follows: "The commingling (sic) chamber 46

could be replaced by a more conventional heat exchanger which does not mix the fluid flowing to and from engine 22, but due to the fact that the fluids are identical and the temperature differential is small the commingling (sic) chamber is preferred because it provides a much larger heat exchange than would a conventional shell and tube exchanger of similar physical size."

who, in 1983, had actually converted the Loesch apparatus by substituting a shell-and-tube heat exchanger for the commingling chamber. The Board also had before it the declaration of Danny K. Mints, in which Mints stated that both he and Loesch intended that if a shell-and-tube heat exchanger were used instead of a commingling chamber, "the connections were intended to be such that there was no mixing of the fluids in these two loops." In view of this evidence, we have no difficulty in affirming the Board's determination of obviousness.

## CONCLUSION

For the reasons set forth in I above, we hold that we have jurisdiction in this matter. For the reasons set forth in II above, we affirm the decision of the Board.

Each side shall bear its own costs.

*AFFIRMED.*