William S. CREDLE, Jr. and Debra Boone Overman, Appellant,

v.

Curtis J. BOND, Appellee.

93–1447.

(Interference No. 101,823).

United States Court of Appeals, Federal Circuit.

June 3, 1994.

Anthony L. Birch, Birch, Stewart, KJolasch & Birch, of Falls Church, VA, argued for appellant. With him on the brief was Terrell C. Birch. Of counsel was Thomas R. Boston.

Thomas R. Boland, Vorys, Sater, Seymour & Pease, of Washington, DC, argued for appellee.

Before LOURIE, Circuit Judge, COWEN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

CLEVENGER, Circuit Judge.

William S. Credle, Jr. and Debra Boone Overman (Boone) appeal from the reconsideration decision of the U.S. Patent & Trademark Office (PTO) Board of Patent Appeals & Interferences (Board) awarding priority of invention of the subject matter defined by the interference count to Curtis J. Bond.[1] For the reasons set forth below, we reverse-in-part, affirm-in-part, and remand.

I

Boone filed patent application, Serial No. 542,322, entitled "Conduit Member for Collapsible Container," on October 17, 1983. Bond, with Liqui–Box Corporation as his assignee, filed patent application, Serial No. 594,761, entitled "Collapsed Bag With Evacuation Channel Form Unit," on March 29, 1984. Finally, on May 18, 1984, Credle et al. (Credle) filed patent application, Serial No.

---

1. *Scholle v. Credle,* Pat.Interf. No. 101,823 (Bd. Pat.App. & Interf. Apr. 21, 1993) (reconsidera- tion); (Nov. 25, 1992) (original decision).

611,796, entitled "A Disposable Liquid Containing and Dispensing Package and Method for its Manufacture." Credle's '796 application and Boone's '322 application are commonly assigned to the Coca–Cola Company. On May 16, 1986, after concluding that all of both Credle's and Bond's claims were allowable, the examiner suspended *ex parte* prosecution on both applications "due to a potential interference."

In response to Credle's subsequent request for clarification on the status of his application, the PTO required Credle to add a suggested allowable method claim thereto *in order to facilitate the declaration of an interference. See* 37 C.F.R. § 1.605(a).[2] Credle added the suggested claim to his application on February 12, 1987. Interference No. 101,823 was then declared on August 10, 1987,[3] between the applications of three parties: Bond, Credle, and Scholle et al.[4] *See* § 1.610(a). Claim 26 of Credle's application and claims 30–34 of Bond's application correspond to the count. Bond was designated the senior party to the interference based on his filing date of March 29, 1984. *See* § 1.601(m). For reasons unstated on the record before this court, Boone was not independently declared a party to the interference based on her '322 application. *See* § 1.602 (no interference shall be declared between commonly owned applications unless "good cause" is shown).

The subject matter of the interference count concerns collapsible bags that facilitate complete liquid evacuation therefrom through use of an elongated "form" or "dip strip" therein. More specifically, the sole count, taken verbatim by the examiner from claim 34 of Bond's application,[5] covers a method of making such collapsible bags. It is reproduced below in part II.

On November 10, 1987, at the close of the three-month preliminary motions period set by the Examiner–in–Chief (EIC) pursuant to §§ 1.611(d), 1.636(a), Credle filed a preliminary statement, *see* §§ 1.621–1.623, which set forth, *inter alia,* two distinct, non-overlapping[6] sets of dates for the activities specified in § 1.623(a)(1)–(6).[7] One set of dates solely concerned Credle's activities; the other set solely concerned Boone's independent activities. Credle's preliminary statement also contained the averment: "The invention of Count 1 ... was made by William S. Credle, Jr. and Debra C. Boone in this country [the United States]" (hereinafter "inventorship statement"). Also on November 10, 1987, Credle filed a preliminary motion to correct inventorship of his application under §§ 1.48, 1.634(a), by adding Boone as a joint inventor. The EIC granted this motion on December 8, 1988.

Credle also filed several preliminary motions under § 1.633 seeking, *inter alia,* to benefit from the filing date of Boone's application, § 1.633(f); to substitute an alternative proposed method count for the count on which the interference was declared, § 1.633(c); and to add a proposed article count to the interference, § 1.633(c). Credle also filed a preliminary motion under § 1.633(a) seeking a judgment that the Bond claims corresponding to the count were unpatentable under 35 U.S.C. §§ 102(e) & 103 (1988) over U.S. Patent No. 4,524,458, entitled "Moisture Responsive Stiffening Members for Flexible Containers," to Pongrass et

---

2. Unless otherwise noted, all subsequent section citations are to 37 C.F.R. (1993).

3. The interference was declared effective as of February 11, 1985.

4. Scholle et al. filed patent application, Serial No. 717,512, entitled "Flexible Container With Improved Fluid Flow Guide," on March 29, 1985. This application was accorded the benefit of Serial No. 635,836, filed on July 30, 1984. Scholle et al. is not a party to this appeal.

5. Bond's claim 34 thus "correspond[s] exactly" to the count. § 1.601(f).

6. The two sets of dates were non-overlapping in that the latest date alleged for any of Boone's § 1.623(a) inventive activities predated the earliest date alleged for any of Credle's § 1.623(a) activities.

7. § 1.623(a) activities consist of the first drawing of the invention; the first written description thereof; the first disclosure thereof by the inventor to another person; conception of the invention by the inventor; actual or constructive reduction to practice thereof; and the beginning of reasonable diligence towards reduction to practice.

al. (Pongrass),[8] in part because Bond's § 1.131 declaration attempting to antedate Pongrass as a prior art reference was unsupported by the evidence of record. On December 8, 1988, the EIC resolved all motions filed by the parties, specifically denying all of Credle's enumerated motions.[9]

On April 24, 1990, after both the EIC's decision on the preliminary motions and the close of the period for taking testimony, Credle filed a motion under § 1.634(a) to further correct inventorship, *inter alia*, of the Credle application by adding Mladomir Tomic, a Coca–Cola subsidiary employee with whom Boone conferred during development of the collapsible bag, as a joint inventor. Pursuant to § 1.628(a), which permits a party to correct a "material error . . . in connection with . . . a preliminary statement" if the correction is shown to be "essential to the ends of justice," Credle also filed a motion for leave to file a corrected preliminary statement that included, in addition to the allegations in the original preliminary statement, a discrete set of dates for Tomic's individual inventive activities, and the inventorship statement: "The invention of Count 1 . . . was made by William S. Credle, Jr., Debra C. Boone and Mladomir Tomic in this country [the United States]." Tomic's set of dates overlapped with those of the other alleged inventors only to the extent that Boone and Tomic were each alleged to have actually reduced the invention defined by the count to practice "on or after May 18, 1983 and before June 3, 1983." Boone's alleged § 1.623(a) dates otherwise predated those of Tomic. The EIC deferred these motions to final hearing before the Board.

The EIC's dispositions of Credle's motions, as well as the deferred motions, were at issue before the Board in the October 1, 1991, final hearing. *See* § 1.654. The Board at that time also addressed the limiting effect of Credle's original preliminary statement, the issue having been raised in Scholle's main brief.

After considering Credle's arguments, the Board on November 25, 1992, affirmed the EIC's denial of Credle's motion for benefit of the Boone '322 application's filing date, reasoning in part that "the Boone disclosure is insufficient to constitute a constructive reduction to practice of the count in issue," as the count was construed by the Board. The Board also affirmed the EIC's denial of Credle's preliminary motions to substitute a proposed alternative method count for the existing count, and to add an article count to the interference, on the respective grounds that Credle's arguments at final hearing regarding the proposed alternative method count were not raised during the preliminary motions period and therefore would not be considered, and that Credle had failed to address the EIC's conclusion that the subject matter of the proposed article count was unpatentable over prior art. With respect to adding the article count, the Board alternatively ruled that "a single count may suffice [to describe the subject matter in interference] where both the method and article in effect constitute the 'same patentable invention' within the context of [§] 1.601(n)." *See* § 1.637(c)(1)(v). As to Credle's motion for judgment of invalidity of Bond's involved claims, the Board agreed with Credle that Pongrass constituted prior art to Bond, because the record did not support the averments in Bond's § 1.131 declaration, and Bond could therefore not antedate Pongrass' filing date. The Board concluded, however, that Pongrass, by itself, was insufficient to render unpatentable the involved Bond claims under either 35 U.S.C. §§ 102(e) or 103.

In ultimately resolving the interference in favor of Bond, the Board found the limiting effect of Credle's original preliminary statement to be dispositive. Citing § 1.629(a),[10]

---

**8.** Pongrass issued on June 18, 1985, based on an application filed November 25, 1983.

**9.** All interlocutory orders entered by an EIC disposing of preliminary motions are presumed to be correct. § 1.655(a). The Board reviews such interlocutory orders for "manifest error or an abuse of discretion" by the EIC. § 1.655(a).

**10.** § 1.629(a) reads, in pertinent part:

A party shall be strictly held to any date alleged in the preliminary statement. Doubts as to (1) definiteness or sufficiency of any allegation in a preliminary statement or (2) compliance with formal requirements will be resolved against the party filing the statement by restricting the party to the earlier of its filing

the Board concluded that Credle's original preliminary statement was

> at best confusing and indefinite in setting out separate dates for each named inventor with respect to the critical inventive acts of conception and actual reduction to practice....
>
> \* \* \* \* \* \*
>
> Any doubt as to whether Credle is alleging joint or independent invention of the subject matter of the count shall be resolved against the party Credle. By naming both Credle and Boone as the inventors of the invention defined by the count, Credle is deemed to have alleged a joint invention.... By alleging a range of conception dates, Credle is restricted to the latest date of the period alleged, namely January 30, 1984. Likewise, ... Credle is restricted to ... March 30, 1984, as the earliest date [of actual reduction to practice] which Credle is entitled to prove....
>
> ... [T]he preliminary statement must be definite on its face. Any doubts regarding definiteness are resolved against the party filing the statement. This principal is the underlying premise of [§ 1.629(a) ].[11]

*Scholle v. Credle,* slip op. at 12–13 (Nov. 25, 1992). The Board dismissed Credle's motions to further correct inventorship of the Credle application and for leave to file a corrected preliminary statement, reasoning that the corrected preliminary statement "suffer[ed] from the same shortcomings" as did Credle's original preliminary statement.

In denying Credle's request for reconsideration, the Board rejected Credle's argument that his original preliminary statement was "in effect a pleading in the alternative dependent upon a decision by the EIC on the motion to [correct inventorship by] add[ing] Boone as an inventor...." Because the Board limited Credle to a date of reduction to practice later than Bond's date of constructive reduction to practice, Bond was awarded priority.[12] Credle timely appealed the Board's decision to this court under 35 U.S.C. §§ 141, 142 (1988).

## II

We turn first to Credle's appeal of the Board's denial of his motion for benefit of the Boone application, and thus reach Credle's argument that the Board erred in interpreting the count.[13] For a party involved in an interference to be accorded the benefit of the filing date of an earlier United States patent application, the earlier application either must be referred to in the declaration of the interference, a situation not presented on the facts of this case, or must be made the subject of a motion "for benefit" under § 1.633(f). Bruce M. Collins, *Current Patent Interference Practice* § 2.9, at 51 (1987 & Supp.1989); § 1.630. Pertinent to the present case, when a party to an interference moves for benefit under § 1.633(f), the preliminary motion filed must, *inter alia,* "[s]how that the earlier application constitutes a constructive reduction to practice" of the subject matter of the count. § 1.637(f)(3). That party, however, bears the burden of establishing support in the earlier application for the subject matter of the count in order to acquire the benefit of the earlier application's filing date. As the Board found in this case, Credle fails to meet this burden.

---

date or effective filing date or to the latest date of a period alleged in the preliminary statement as may be appropriate....

**11.** The Board thus relied solely on the indefiniteness prong of § 1.629(a), and did not explicitly find that the original preliminary statement was insufficient.

**12.** None of the parties to the interference raised the issue of reasonable diligence after conception of the invention to establish priority. The interference was thus resolved on the parties' dates of actual or constructive reduction to practice

alone. *Scholle v. Credle,* slip op. at 4 n. 4 (Nov. 25, 1992).

**13.** If Credle is able to acquire the benefit of Boone's filing date, October 17, 1983, Credle's effective filing date would then predate that of Bond—March 29, 1984—and Credle would be the senior party to the interference. § 1.657. Bond would then bear the burden during the interference of overcoming the presumption of priority accorded to the senior party. §§ 1.601(m), 1.657. *See generally* 3 Donald S. Chisum, *Patents* § 10.03[1], at 10–21 to –28 (1993).

Whether Credle can establish that the disclosure of the subject matter in Boone's application qualifies as a constructive reduction to practice of the subject matter of the count depends, in large part, on the proper interpretation of the count. The count reads (emphasis added):

The method of producing collapsed bags having spouts with evacuation form unit inserts connected therein which comprises, for each bag,

*providing* an insert with an elongated form upon which the bag can collapse as it is evacuated which has at least one continuous longitudinal open passage along its length and has an inner open end, *joining* two opposed webs of material to produce opposed walls of the bag, and before joining the webs *applying a spout to one of the webs extending outwardly therefrom and with its inner end open and flexibly securing the form,* with its inner end in liquid communication with the spout and extending transversely therefrom to lie flat between said opposed webs so that as each completed bag is filled with liquid the form will *swing into the liquid* and the bag will collapse around it as it is evacuated.

Credle challenges the Board's interpretation of two specific limitations of the count: the phrase "flexibly securing the form" and the phrase "swing into the liquid." As to Credle's first concern, the Board adopted the reasoning of the EIC in interpreting the count, concluding that its

expression "with its inner end open and flexibly securing the form" must be read as a single qualifying phrase referring to the previously recited step of "applying a spout".... Any broader construction ... would be strained and unreasonable under the circumstances since it would unnecessarily give rise to a question of indefiniteness [of the claims corresponding to the count].... Credle's construction would leave open the question of what the form is secured to.

*Scholle v. Credle,* slip op. at 10–11 (Nov. 25, 1992).

Credle argues first that the limitation "and flexibly securing the form" in the count defines a method step to be taken by an artisan in constructing the collapsible bag, rather than a description of the bag itself and the interaction of the components thereof, as the Board concluded. Contrary to the EIC's reasoning, Credle then contends that reading the count's "flexibly securing" language as a method step would not give rise to an indefiniteness problem, even though the count fails to recite a specific location in the bag being formed to which the form unit would be flexibly secured. Rather, citing *DeGeorge v. Bernier,* 768 F.2d 1318, 1321, 226 USPQ 758, 760–61 (Fed.Cir.1985) (term of interference count to be given broadest reasonable interpretation), Credle asserts that the count's failure to specify to what the form unit is secured simply indicates that the count's coverage is quite broad.

 The proper interpretation of a count, like the proper interpretation of a claim, is a question of law that this court reviews *de novo. Davis v. Loesch,* 998 F.2d 963, 967, 27 USPQ2d 1440, 1444 (Fed.Cir. 1993); *DeGeorge,* 768 F.2d at 1321, 226 USPQ at 760. A count's proper construction must be discerned by examining the language of the count as a whole. In determining the true meaning of the language of the count, the grammatical structure and syntax thereof may be instructive. *See, e.g., DeGeorge,* 768 F.2d at 1322, 226 USPQ at 760–62.

When this principle is applied to the present count, one of ordinary skill in the art would observe that the entire clause

and before joining the webs applying a spout to one of the webs extending outwardly therefrom *and* with its [the spout's] inner end open *and* flexibly securing the form

(emphasis added) is offset by commas from the rest of the count. It is thus clear that this entire clause describes the state of events in building the collapsible bag before the two webs are joined together. Moreover, it is clear from the structure of the clause that the phrases "extending outwardly therefrom," "with its inner end open," and "flexibly securing the form" all modify and describe the spout. This is both logically and

grammatically required by the presence of the emphasized *"ands."*

Furthermore, from the structure of the entire count, one observes that before each clause containing an undisputed present participle designating the method steps—*"providing* an insert with an elongated form ..."; *"joining* two opposed webs of. material to produce opposed walls ..."; and "... *applying* a spout to one of the webs extending outwardly therefrom ..."—there is a comma, indicating the beginning of a new, distinct step to be taken in the method of producing the collapsible bags. There is no such comma preceding "flexibly securing." This suggests that "securing" is not a present participle signifying a distinct method step, but instead indicates the static relationship between the spout and the form. Credle's proposed construction of the count is at war with its grammar and syntax and thus would force an unreasonable interpretation. We thus conclude that the Board correctly interpreted this portion of the count.

Credle next argues that the Board erred in determining that the disclosure of Boone's application could not support the interference count's limitation, "as each completed bag is filled with liquid the form will *swing into the liquid,* " (emphasis added), by reading the limitation too narrowly. On this matter, the Board held:

> At most, one may reasonably conclude from ... the Boone disclosure that the dip strip "swings" along with a wall of the bag and comes into contact with liquid. However, we do not see how mere contact with a body of liquid necessarily satisfies the requirement of the count that the dip strip swing *into* that body of liquid.

*Scholle v. Credle,* slip op. at 3 (Apr. 21, 1993) (emphasis in original). Contrary to the Board's position, Credle argues that when the phrase "swing into the liquid" is given its broadest reasonable interpretation as required by *DeGeorge,* it should be read as meaning that the form will "swing *down* into the bag upon filling" with liquid, as Bond argued during prosecution of the '761 application. Credle argues that according to this interpretation, Boone's disclosure can support the count's limitation because of the necessary contact between Boone's form and the liquid in the bag.[14]

The Board, however, interpreted the limitation "swing into the liquid" as requiring that the form not be attached to the wall of the bag in such a fashion as to prevent at least the distal portion of the form from swinging freely into the liquid as the bag is filled. The Board thus read the limitation "swing into the liquid" as requiring more than mere contact between the form and the liquid in the collapsible bag. We agree with the Board's interpretation. From the configuration of the invention, the form *must* by definition contact the liquid in the bag when the bag is filled, otherwise the form would be incapable of achieving the required complete evacuation. Consequently, the count's explicit language requires more than mere contact between the form and the liquid. The requirement that the form swing into the liquid, as the Board found, implies that the form is capable of moving independently of the walls of the collapsible bag, and thus precludes a form integral along its entire length with one of the bag's walls.[15] If a form were integrally attached to the wall in such a fashion, it would only be capable of swinging outwardly with the bag's wall as the

---

**14.** Credle argues that the specification of Bond's '761 application contains no written description of the phrase "swing into the liquid." The Board held, however, that any challenge under 35 U.S.C. § 112 ¶ 1 to the basis of the count's "swing into the liquid" limitation was untimely, because the issue could have been raised in a preliminary motion, but was not. § 1.655(b); *see Heymes v. Takaya,* 6 USPQ2d 1448, 1452 (Bd.Pat.App. & Interf.1988). Since Credle has failed to argue that his failure to raise the issue was for "good cause," the Board did not abuse its discretion in not considering the issue. *See* § 1.655(b), (c) (Board may consider

untimely raised issue "[t]o prevent manifest injustice."); *Conservolite, Inc. v. Widmayer,* 21 F.3d 1098, 1101 (Fed.Cir.1994) ( & cases cited therein) (discussing consequences of not raising issue in preliminary motion); *see also United States Dep't of Energy v. Daugherty,* 687 F.2d 438, 446, 215 USPQ 4, 11 (CCPA1982).

**15.** Figure 4 of Boone's application, "illustrat[ing] the operation of the invention," discloses that the form inside the collapsible bag is integral with one of the side walls along its entire length.

bag is filled with liquid and thus would not swing *into* the liquid.

Moreover, this analysis also pertains to Credle's suggested interpretation that the form "swing *down* into the bag upon filling." If the form is integral with one of the walls of the collapsible bag, a construction evident from Boone's disclosure, it would be incapable of swinging in any direction, whether it be *into* the liquid or *down into* the bag. The only movement capable of such a setup would be corresponding movement with the wall of the bag, which clearly is not what is required by the count's language. Consequently, we conclude that the Board correctly interpreted this aspect of the count.

 Finally, we understand Credle to argue that even if the Board's interpretation of the count were correct, Boone's disclosure nevertheless supports the subject matter of the count. On the basis of its interpretation of the count, however, the Board found that "the Boone disclosure ... cannot be said to specifically teach that the dip strip [is] attached or secured to the spout, let alone ... 'flexibly' secured as required by the count," and that "the arrangement disclosed by Boone does not appear to be capable of allowing the dip strip to 'swing into the liquid,'" because the form in Boone's application was integral to the wall along its entire length. On reconsideration, the Board, analyzing Boone's disclosure in detail, concluded that movement of the form with the bag wall as the bag is filled with liquid did not satisfy the "swing into" limitation of the count. What is disclosed in an application involved in an interference, and whether an application supports the subject matter of a count, are questions of fact which we review under the clearly erroneous standard. *See Davis v. Loesch,* 998 F.2d at 968–69, 27 USPQ2d at 1445; *cf. Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1560, 1563, 19 USPQ2d 1111, 1114, 1116 (Fed.Cir.1991) (whether specification supports claims corresponding to count, and thereby satisfies written description require-

ment of 35 U.S.C. § 112 ¶ 1, is question of fact). On this record, and for the reasons discussed above, we cannot conclude that the Board so erred. Thus, because the Boone application cannot support at least two material limitations of the count, Credle has failed to demonstrate that the Boone application constitutes a constructive reduction to practice of the count. Credle therefore cannot be accorded the benefit of the Boone application's filing date.

### III

We now turn to Credle's argument that the Board erred in finding his original preliminary statement indefinite, thus taxing him with the latest of the crucial inventive dates alleged. Credle asserts that the reason he included two separate sets of dates in his original preliminary statement was because of the then pending motion to correct inventorship of his application under §§ 1.48, 1.634(a), by adding Boone as a joint inventor. Had he not included both sets of dates, Credle claims, he would have violated the requirements of §§ 1.621–1.623.

Credle also contends that the Board confused his motion to correct inventorship of *the application* under §§ 1.48, 1.634(a), by adding Boone as a joint inventor of *the application,* with his alleged alternative assertion in his original preliminary statement that either Credle alone, or Boone alone, solely invented the subject matter of *the count,* depending on the interpretation given to the actual language of the count. Indeed, according to Credle at oral argument, "with respect to joint invention, we have never said on the record that as far as the count *per se* is concerned, that Boone and Credle jointly invented the count."[16] In light of the circumstances, Credle concludes that the Board erred in deeming his original preliminary statement to set forth an allegation of joint inventorship of the count, and in holding that his original preliminary statement therefore

---

16. Instead, Credle asserted that he had only advocated that the invention defined by the count had been invented by Boone as a sole inventor, or alternatively, by Credle as a sole inventor. Yet Boone, in an affidavit contemporaneously filed with Credle's motion to further correct in-

ventorship, explicitly stated: "I believe that I am a *joint inventor* with [Credle] of the subject matter of *the Count* in this interference, ...." (emphasis added). Boone thus appears to contradict Credle's view of their respective roles regarding invention of the count.

must be definite within the meaning of § 1.629(a), especially since he set forth two distinct sets of dates under § 1.623(a), one for each alleged sole inventor, rather than a "range of ... dates" under § 1.629(a) as found by the Board. Finally, Credle argues that Credle's corrected preliminary statement is definite for the same reasons that his original preliminary statement is definite, and the Board therefore erred in dismissing his motions to add Tomic as a joint inventor and for leave to file his corrected preliminary statement.

### A

In determining that Credle's original preliminary statement was indefinite, the Board evidently reasoned that since the language set forth in Credle's inventorship statement *could* be read, in isolation, as asserting joint inventorship of the subject matter of the count, it would resolve "[a]ny doubt as to ... invent[orship] of the subject matter of the count ... against ... Credle" under § 1.629(a) by deeming Credle to have alleged joint inventorship of a single invention by himself and Boone. *See* § 1.622(a) (preliminary statement "must identify the inventor who made the invention defined by each count"). The Board then apparently reasoned that since a single invention made by a single inventive entity necessarily contemplates only one date for each § 1.623(a) activity, Credle's original preliminary statement was undoubtedly indefinite because Credle alleged therein two specific dates for each and every event, thereby establishing "range[s] of ... dates" which, according to § 1.629(a), must be "resolved against the party filing the statement by restricting the

party to ... the latest date of ... period[s] alleged in the preliminary statement...." *Scholle v. Credle*, slip op. at 13 (Nov. 25, 1992).

The Board's conclusion that Credle's original preliminary statement is indefinite rests on the proposition that the preliminary statement averred joint inventorship. By focussing entirely on the conjunctive inventorship statement—"The invention of Count 1 ... was made by [Credle] *and* [Boone]" (emphasis added)—however, the Board gave no weight to the other averments in the preliminary statement which, on their face, disprove the possibility of joint inventorship of this particular count.

■ Credle's original preliminary statement clearly asserted two entirely separate, non-overlapping sets of dates for both Credle and Boone.[17] Such allegations do not compel a conclusion that both are joint inventors, a status that necessarily requires some degree of collaboration. *Kimberly–Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 915–17, 23 USPQ2d 1921, 1924–26 (Fed.Cir. 1992). On the contrary, where the sets of dates alleged define distinct, non-overlapping periods, the allegation that the inventors are joint is facially inconsistent with the two distinct periods, because a person who first conceived and first reduced the subject matter of the invention to practice cannot, under the law, be a joint inventor with a person who allegedly did not even conceive the invention until after the former's reduction to practice. Collaboration under such circumstances simply is not possible. Consequently, Credle and Boone cannot be joint inventors of the subject matter of the count.[18]

17. Thus, Credle's original preliminary statement does not present a situation wherein separate, non-overlapping § 1.623(a) dates are alleged for only some, but not all, of each inventor's activities, a situation that would not necessarily preclude joint inventorship status.

18. In his preliminary motion to correct inventorship of his application by adding Boone as a joint inventor, Credle stated:

[A]t the time the subject '796 [Credle] application was prepared and filed, the invention described and claimed focused on *Credle's contribution* to the invention. That is, the main emphasis of the [Credle] application *was on the*

*various embodiments of the invention wherein one end of the strip was mechanically attached or bonded to the collapsible bag spout.* Because of this emphasis, less attention was given to *Boone's contributions* to the invention, which include *inter alia*, the provision of a dip strip in a collapsible bag during the manufacturing of the bag and the location of *one end of the dip strip adjacent to the spout* (BUT NOT AT-TACHED THERETO) and in liquid communication therewith. *These contributions of Boone* are FULLY DISCLOSED in [the Boone '322 application]. (emphasis added). The Board did not focus on whether Credle, by this statement, admitted that Boone's inventive activities alleged in the original

The Board thus erred in not construing the original preliminary statement as a whole. In this case, the individual dates averred as to the crucial § 1.623(a) inventive activities wholly undercut any notion that joint inventorship could be inferred from Credle's conjunctive inventorship statement under § 1.622(a).[19]

Absent any basis to conclude that Credle's original preliminary statement averred joint inventorship, there is no basis on which to conclude that the separate dates averred for each of the alleged inventors gave rise to a "range" or "series" of dates, the latest of which Credle would be assigned under § 1.629(a). Credle's preliminary statement set forth only one definite date for each § 1.623(a) activity for each alleged inventor.[20] Credle thus merely complied with § 1.623(a), as he argues, and therefore cannot properly be limited to the series of later dates alleged pursuant to § 1.629(a) on the ground that he alleged joint inventorship. Because the Board erred in holding Credle to the latest set of dates alleged in his original preliminary statement, we reverse the Board's decision with respect to Credle's original preliminary statement and remand for further proceedings in light of this opinion.[21] We express no opinion as to whether the original preliminary statement is objectionable either under § 1.629(a), for a reason other than that relied on by the Board, or under another of the Board's regulations.

## B

Under the same inventorship analysis, Credle's corrected preliminary statement, sought to be filed in connection with his effort to further correct inventorship of his application by adding Tomic as a joint inventor, does not "suffer[ ] from the same shortcomings" as attributed by the Board to Credle's original preliminary statement. In his corrected preliminary statement, Credle alleges that he did not even conceive the subject matter of the count until after the dates on which both Boone and Tomic are alleged to have actually reduced the invention to practice. Thus, Credle, Boone, and Tomic cannot possibly all be joint inventors of the subject matter of the count under *Kimberly–Clark*.[22] The Board's dismissal of Credle's motions thus rested on the same erroneous proposition as did its conclusion that Credle's original preliminary statement was indefinite under § 1.629(a)—namely, that Credle was deemed to have asserted joint inventorship. We therefore reverse the Board's dismissal of Credle's motions, on the ground that Credle's corrected preliminary statement cannot be read to allege joint invention of the subject matter by Credle, Boone, and Tomic, and remand for further proceedings. On remand, the Board may determine whether Credle's belated motions comply with its regulations, including, *inter alia*, §§ 1.622(a), 1.628(a), and 1.629(a).

preliminary statement disclose no more than the subject matter disclosed in Boone's application, and therefore whether Boone can be a sole inventor of the subject matter of the count.

19. A preliminary statement's inventorship statement under § 1.622(a) that two persons are alternatively sole inventors of the invention defined by the count is not inconsistent with the legal requirement that there be only one true inventive entity of an invention. The inventorship statement is merely an allegation subject to later proof.

20. That Credle's original preliminary statement actually alleged a true "period" for Boone's actual reduction to practice—"on or after May 18, 1983 and before June 3, 1983"—is not relevant to any of the issues in this case.

21. Credle also argues that the Board should not have resolved the interference without entertain-

ing his "testimony." To the extent that Credle's argument relates to testimony relevant to issues which are to be addressed by the Board on remand and which were preserved by Credle, the Board will have the opportunity to entertain such testimony, if appropriate under the circumstances of this particular interference, and if necessary to its proper resolution.

22. We are not bound by the Board's decision in *Lawson v. Enloe*, 26 USPQ2d 1594, 1596–97 (Bd. Pat.App. & Interf.1992), which attributed joint inventorship to a comparable conjunctive inventorship statement under similar circumstances. Also, we need not decide whether a conjunctive inventorship assertion alone, even in the absence of an explicit reference to "joint" inventorship, necessarily equates with an allegation of joint inventorship when the dates alleged do not prohibit such an assertion.

## IV

■ Credle also contends that the Board erred in denying entry of his proposed alternative method count as a substitute for the method count taken verbatim from Bond's application. Credle's proposed count would, *inter alia*, supplant the existing phrase "swing into the liquid" with the phrase "swing in response to the flow of liquid through the spout." Credle urges the necessity of this substitution because the "count" as written violates the written description requirement of 35 U.S.C. § 112 ¶ 1,[23] since the existing phrase allegedly lacks support in Bond's specification. Credle also argues that the "count" is indefinite under 35 U.S.C. § 112 ¶ 2 because of the "swing into" limitation, relying on the testimony of one of Bond's coworkers, Tschanen. Based on these two arguments, Credle further alleges that the count as written does not accurately describe the interfering subject matter. Credle's contentions, if correct, would compel a remand for further proceedings on this ground.

The Board rejected Credle's written description challenge under 35 U.S.C. § 112 ¶ 1 because it could have been raised in a preliminary motion under § 1.633(a), but was not. *Scholle v. Credle*, slip op. at 7 (Nov. 25, 1992); § 1.655(b). We find no error in the Board's treatment of this issue. *See* note 14 above. Regarding the indefiniteness argument, the Board ruled that Credle had failed to present the argument based on Tschanen's testimony in his preliminary motion for substitution of the count, and in the alternative, that Credle's reliance on the ambiguous and confusing testimony of one of Bond's coworkers, Tschanen, was insufficient to carry his "burden of persuasion as to the alleged indefiniteness of the phrase [swing into the liquid] in question." *Scholle v. Credle*, slip op. at 7 (Nov. 25, 1992). Since both the indefiniteness of Bond's claim based on this limitation,

and thus the accuracy of the count's language, were timely raised before the Board in Credle's preliminary motion to substitute the alternative proposed count, and since Credle's arguments based on Tschanen's testimony simply bolsters his arguments presented in his preliminary motion, we consider both issues on appeal.

■ Indefiniteness is a question of law that this court reviews *de novo*. *Carl Zeiss Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1181, 20 USPQ2d 1094, 1101 (Fed.Cir. 1991). Under 35 U.S.C. § 112 ¶ 2, a specification shall include claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." Determining whether a claim is indefinite requires an analysis of "whether one skilled in the art would understand the bounds of the claim when read in light of the specification.... If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, [section] 112 demands no more." *Miles Lab., Inc. v. Shandon Inc.*, 997 F.2d 870, 875, 27 USPQ2d 1123, 1126 (Fed.Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994); *see also Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1385, 231 USPQ 81, 94–95 (Fed.Cir. 1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987). The limitation "swing into the liquid," as construed by the Board in this case, does not render claim 34 indefinite in light of Bond's specification. One of ordinary skill in the art reading the claim certainly would understand the nature of the language "swing into the liquid" in light of the specification and drawings. Such comprehension is all that is required by section 112 ¶ 2. Tschanen's confusing testimony does not present sufficient basis on which to conclude that the claim is indefinite under this standard. We thus conclude that Bond's

**23.** When a party raises an issue of patentability in an interference, it is the claims on which the parties and the Board should focus. *In re Van Geuns*, 988 F.2d 1181, 1184, 26 USPQ2d 1057, 1059 (Fed.Cir.1993); §§ 1.633(a), 1.641. The claims, not the count, may be challenged as unpatentable. *See id.* at 1184, 26 USPQ2d at 1058–59; *Squires v. Corbett*, 560 F.2d 424, 433, 194 USPQ 513, 519 (CCPA1977); § 1.603 (in

interference between two applications, interfering subject matter must be "patentable to each applicant" subject to determination of priority). Since the count in this interference corresponds exactly to claim 34 of Bond's application, however, we read Credle's arguments regarding the "count" to challenge the patentability of Bond's corresponding claim 34.

claim is not indefinite on the argued basis. Moreover, there is no basis to conclude that the count as written fails effectively to describe the interfering subject matter, so as to require replacement of the count with Credle's proposed alternative count.

## V

Credle also argues that the Board erred in denying the addition to the interference of a proposed article count, allegedly different in scope than the method count. As to this matter, the Board found that Credle had failed to challenge the EIC's ruling that the proposed method count described unpatentable subject matter under 35 U.S.C. § 103 over certain, cited prior art, *Scholle v. Credle,* slip op. at 7–8 (Nov. 25, 1992); that the issue of the difference in scope was not argued in Credle's main brief; and "[i]n any event, [that] a mere difference in scope is not dispositive on the question of 'separate patentability' of the proposed article count relative to the patent method count." *Scholle v. Credle,* slip op. at 7 (Apr. 21, 1993).

On appeal, Credle first argues that the Board was incorrect in ruling that he had failed to preserve the issue for reconsideration by the Board. Citing *Orikasa v. Oonishi,* 10 USPQ2d 1996, 2003 (Comm'r Pat. & Trademarks 1989), Credle then argues that the article count should have been added to the interference because his proposed article count describes an invention of different scope than that described by the existing method count, and therefore describes separately patentable subject matter. Credle relies on the fact that the proposed article count recites the limitation that an end of the elongated form is "connected to the spout," and that the count's clause "before joining

the webs ... securing the form" is allegedly absent from the proposed article count.

Even assuming that Credle properly raised the issue in his main brief before the Board, however, Credle fails to address the Board's alternative holding that Credle had failed to address the EIC's finding that the proposed article count was directed to unpatentable subject matter under section 103. Having failed to confront all of the grounds on which the Board ruled, we cannot conclude that the Board erred in affirming the EIC's denial of Credle's motion to add the article count to the interference.

## VI

Finally, Credle appeals the Board's conclusion that Pongrass neither anticipated nor rendered obvious the subject matter of Bond's involved claims corresponding to the interference count.[24] Without any legal support, Credle first appears to argue that the simple fact that Bond failed to "swear back" of Pongrass with a § 1.131 declaration of prior invention[25] establishes that Pongrass anticipates Bond's claims corresponding to the interference count.

 The essence of Credle's position is that a failed attempt to antedate a prior art reference constitutes an admission that the prior art truly renders the subject matter of the application unpatentable. We know of no authority to support this argument, however. Such an affidavit or declaration may be employed during prosecution in immediate response to a prior art rejection by the examiner to overcome that rejection and therefore to obviate any unnecessary patentability argument. The PTO does not impose the burden of overcoming with argument prior art which is to be antedated with a § 1.131 affidavit. To accept Credle's argument, howev-

---

24. If sound, Credle's argument would render the subject matter of the count unpatentable to any party, Credle included, who could not antedate Pongrass as a reference. Credle filed this preliminary motion for judgment, however, on the assumption that he could benefit from Boone's priority dates and thus antedate Pongrass. Because Credle has not been accorded the benefit of the Boone application's filing date, Credle's argument now would prove as terminal to his own case for patentability as it would to Bond's,

were Credle in a position otherwise to prevail in the interference.

25. During prosecution of Bond's application, the examiner rejected claims 33 and 34 as anticipated under 35 U.S.C. § 102(e) by Pongrass. In response thereto, Bond filed a § 1.131 declaration, executed on December 16, 1985, seeking to overcome Pongrass as a reference. It is this declaration that provides the basis of Credle's concerns.

er, would be to force an applicant to rely on a § 1.131 affidavit or declaration only as a last resort, out of fear that an early failure to antedate the allegedly invalidating reference with a § 1.131 affidavit would preclude that party from then being able to overcome that reference with argument. We thus conclude that the mere filing of such an affidavit or declaration does not constitute an admission that the reference sought to be antedated renders the invention in question unpatentable. *Cf. Greenwood v. Hattori Seiko Co.,* 900 F.2d 238, 240–41, 14 USPQ2d 1474, 1475–76 (Fed.Cir.1990) (district court erred in determining that certain publications were prior art solely because § 1.131 affidavit contained inadequate showing as to alleged date of invention before prior art). We therefore reject Credle's position.

Credle next relies on the text of Bond's § 1.635 preliminary motion[26] to argue that Bond admitted that the "count" as written is unpatentable over Pongrass.

Bond's § 1.635 motion reads, in part:

In order for the count [sic] to be patentable to the parties Credle or Scholle they will have to show that they made the invention before the filing date of the Pongrass patent.... Should the [PTO] determine that either party Credle or Scholle cannot overcome the Pongrass reference, then the interference can be dismissed against either party not able to overcome the Pongrass reference.

Whether this statement constitutes an admission on Bond's part that his involved claims are not patentable over Pongrass need not be addressed at this time, however, since the argument was not presented to the Board for consideration. *See Paivinen v. Sands,* 339 F.2d 217, 221 n. 3, 144 USPQ 1, 4 n. 3 (CCPA 1964) (issue not preserved for appeal to court when denial of motion by examiner was not addressed at final hearing before Board); *Josserand v. Taylor,* 138 F.2d 58, 66, 59 USPQ 140, 148 (CCPA1943) (issue not raised before Board will not be considered on ap-

peal), *supp. op.,* 159 F.2d 249, 72 USPQ 357 (CCPA1946).

Credle finally relies on Pongrass' disclosure to argue both that Pongrass anticipates Bond's involved claims under 35 U.S.C. § 102(e) and that, *a fortiori,* Pongrass alone would have rendered the subject matter defined thereby obvious under 35 U.S.C. § 103. As to this issue, the Board ruled that

Pongrass is not sufficient in and of itself to anticipate or render obvious the involved Bond claims.... [Pongrass] is silent as to whether the dip strip ... is "flexibly" secured adjacent a bag aperture or spout so that the dip strip is capable of swinging into the liquid as the bag is filled....

We review a finding of lack of anticipation for clear error, *see In re Baxter Travenol Lab.,* 952 F.2d 388, 390, 21 USPQ2d 1281, 1283 (Fed.Cir.1991), and a conclusion of nonobviousness *de novo,* while reviewing the factual findings underlying the obviousness determination for clear error, *In re Fritch,* 972 F.2d 1260, 1264, 23 USPQ2d 1780, 1782 (Fed. Cir.1992); *In re Woodruff,* 919 F.2d 1575, 1577, 16 USPQ2d 1934, 1935 (Fed.Cir.1990). Credle argues, *inter alia,* that the Board overlooked Pongrass' disclosure that the dip tube thereof is *"flexible* when dry and becom[es] stiffened [only upon] exposure to moisture," (emphasis added), and that therefore Pongrass discloses, or at least teaches, a form flexibly secured to the spout. Credle's argument, however, is logically flawed in that it presupposes that something flexible must necessarily be "flexibly" secured when attached to an inflexible object. Nothing, however, prevents the existence of a perfectly secure, inflexible bond between the end of a flexible member and another inflexible object, be it a spout of a collapsible container or otherwise. Applying our standards of review to the Board's decision on this issue, we find no error.

## VII

For the foregoing reasons, the Board's decision in this interference is reversed to the

---

**26.** During the interference, Bond moved under § 1.635, *inter alia,* for an order to require both Credle and Scholle to file § 1.131 affidavits to overcome Pongrass. Therein, Bond explicitly relied on the fact that he thought he had already antedated Pongrass with his own § 1.131 declaration.

extent that the Board (i) read Credle's original preliminary statement to allege joint inventorship of the subject matter of the count, and (ii) dismissed Credle's motions for leave to file a corrected preliminary statement and to further correct inventorship of the Credle application. The Board's decision is otherwise affirmed. The case is remanded for further proceedings consistent with this opinion.

No costs.

*REVERSED–IN–PART, AFFIRMED–IN–PART and REMANDED*